JOANOS, Judge.
Appellant Great Outdoors Trading, Inc. appeals the final judgment denying its petition for a permanent injunction to restrain the City of High Springs from enforcing a zoning ordinance. The question before the court is whether Section 805 of the Charter of the City of High Springs provides that a referendum petition may suspend an ordinance which has already taken effect. We affirm.
The dispute in this case concerns appellant’s possible entitlement to a license to sell alcoholic beverages. Section 4-3(a) of the Code of Ordinances of the City of High Springs stated:
No license for the sale of alcoholic beverages shall be issued to any applicant where the place of business to be licensed is within six hundred (600) feet of an established church, which distance shall be measured by extending a straight line from the main entrance of the building, of the licensed premises of the applicant to the main entrance of the church building.
The Cafe, appellant herein, is located more than 500 feet but less than 600 feet from the nearest church. On July 9, 1987, by a 3-2 vote, the City Commission passed Ordinance 87-6, amending Section 4-3(a) to permit the sale of beer and wine in the Central Business District (C-CBD) of High Springs “provided service and consumption are within a completely enclosed building; and provided the restaurant or cafe is situated more than five hundred (500) feet from an established church (as measured in Section 4-3(a).” Section 2 of Ordinance 87-6 states: “This ordinance shall take effect on the date of its passage on second and final reading.” First reading of the ordinance was June 2, 1987; second reading of the ordinance was July 9, 1987.
At 9:00 p.m. on July 9, 1987, the City Commission took a brief recess, at which time the mayor signed Ordinance 87-6, and the city clerk attested it. The city clerk then certified to the Division of Alcoholic Beverages and Tobacco (DABT) that appellant was in compliance with the ordinances of the city, thereby satisfying DABT’s requirement for the issuance of a license to sell alcoholic beverages. During the same recess, the city clerk issued forms necessary to petition for a referendum on Ordinance 87-6.
The referendum provision at issue here is Section 805 of Article VIII of the city’s charter. Section 805, entitled “Referendum Petitions; Suspension of Effect of Ordinance,” provides:
*485 When a referendum petition is filed with the City Clerk, the ordinance sought to be reconsidered shall be suspended from taking effect. Such suspension shall terminate when:
a. There is a final determination of insufficiency of the petition,
b. The Petitioners’ Committee withdraws the petition, or
c. The Commission repeals the Ordinance.
At 10:30 p.m. on July 9, 1987, following the City Commission recess, the referendum petitions issued earlier by the clerk, were filed, having been executed by more than the required fifteen percent of the registered voters of High Springs.
On July 10, 1987, appellant applied for a license to sell alcoholic beverages. DABT issued a temporary license pending final approval of the application, and appellant commenced selling alcoholic beverages on its premises on that same date. On September 10, 1987, the City Commission, by a 3-2 vote, adopted Ordinance 87-11, which repealed Ordinance 87-6, thereby restoring Section 4-3(a) to its form prior to July 9, 1987. On September 29, 1987, the City Commission passed Resolution 87-G, advising DABT that Ordinance 87-6 had been repealed and that the clerk’s statement reflecting appellant’s compliance with the city’s zoning requirements was revoked. On October 26, 1987, appellant filed a complaint and a motion for “temporary injunction restraining the city from enforcing or attempting to enforce Ordinance 87-11 during the pendency of [the] action.” On October 30, 1987, the trial court, pursuant to stipulation of the parties, entered an order granting the motion for temporary injunction enjoining the city from enforcing Ordinance 87-11.
On September 15, 1988, the trial court entered a final judgment in favor of the city, finding, among other things that, Ordinance 87-6 was suspended from taking effect with the filing of the petitions. The trial court further found that since the effect of Ordinance 87-6 was suspended, the certificate of the clerk stating that the cafe was in compliance with the city’s then existing ordinance was invalid before it was filed with DABT. Because no sale or service of alcoholic beverages had taken place before the filing of the petitions, the court concluded that an estoppel claim could not be asserted against the city on the basis of prior use.
It is well settled that statutory rules of construction are applicable to municipal ordinances. See Rinker Materials Corp. v. City of North Miami, 286 So.2d 552, 553 (Fla.1973), and cases cited therein. A logical corollary to this principle is that statutory rules of construction apply to the provisions of a city charter as well.
The starting point in the construction of statutes is to discern and to give effect to the legislative will, since “intent is the essence of the law.” City of Boca Raton v. Gidman, 440 So.2d 1277, 1281 (Fla.1983). Other rules pertinent to the construction question raised in this appeal include the “plain meaning” rule, which provides that words of common usage should be given their plain and ordinary meaning, since it is assumed that the legislative body knows the • plain and ordinary meaning of the words used in statutes. Rinker Materials Corp. v. N. Miami, 286 So.2d at 553; Brooks v. Anastasia Mosquito Control District, 148 So.2d 64, 66 (Fla. 1st DCA 1963). A literal interpretation should not be given, however, when to do so leads to an unreasonable or ridiculous result or to a purpose not designated by the lawmakers. City of Boca Raton v. Gidman, 440 So.2d at 1281. A law should be construed together with other laws having the same purpose so that the provisions are in harmony with each other. Id., at 1282. See also Yolman v. Department of Professional Regulation, 508 So.2d 468 (Fla. 1st DCA 1987). Similarly, statutes relating to the same subject matter are in pari materia, and, to the extent that the understanding of one would aid in the interpretation of the other, they should be construed together and compared with each other. Goldstein v. Acme Concrete Corp., 103 So.2d 202 (Fla.1958). Moreover, “in the absence of clear legislative expression to the contrary, a law is presumed to operate prospective *486 ly.” Walker & LaBerge, Inc. v. Halligan, 344 So.2d 239, 241 (Fla.1977).
The decision whether to enjoin enforcement of a valid ordinance is a matter to be resolved by the courts, and requires the court to weigh the inequity to the individual in the event the ordinance is enforced. The trial court’s decision, like that of the zoning body, should not be disturbed unless there has been an abuse of discretion. Jones, 399 So.2d at 1073.
Inevitably, zoning legislation designed to promote the public welfare will impair individual rights and effect a financial disadvantage to someone within the zoned area. Occasionally, the doctrine of equitable es-toppel will apply to relieve the harsh consequences of a zoning decision, but such relief arises in only very narrow circumstances, i.e., “only where one with a legally recognizable interest in property (1) has made such a substantial change in his position, (2) in good faith reliance upon some act or omission of the government, that it would be highly inequitable and unjust to destroy (3) the rights he has acquired.” Jones v. First Virginia Mortgage & Real Estate Investment Trust, 399 So.2d 1068, 1074 (Fla.1981). See also Pasco County v. Tampa Development Corp., 364 So.2d 850, 852 (Fla. 2d DCA 1978) (equitable estoppel will not lie against a governmental entity unless there has been clear and affirmative action on the part of the local zoning authority upon which the party seeking relief from a zoning regulation could rely).
Section 805, the referendum provision at issue in this case, appears in Article VIII of the City Charter, which sets forth the procedures by which voters may exercise their reserved right to propose and to change zoning ordinances. Therefore, Article VIII should be considered in toto in the interpretation of Section 805. Briefly, Section 801 sets forth the authority of qualified voters to propose ordinances, and to require reconsideration of any adopted ordinance. In addition, this section establishes that commission failure to act on citizen proposals will result in a referendum election. Section 802 sets forth the requirements for commencement of an initiative or referendum proceeding. Section 803 establishes the criteria for petitions. Section 804 establishes the procedure and time limitations for filing petitions. Section 805, the subject of this appeal, provides for suspension of the effect of an ordinance upon the filing of a petition. Finally, Sections 806 and 807, respectively, mandate the action to be taken when an initiative or petition has been deemed sufficient.
Sections 804.a. and 806 shed the most light on the proper construction of Section 805. Section 804.a., which sets forth the procedure for filing a petition, states:
a. Within 20 days after the petition is filed, the City Clerk shall complete a certificate as to its sufficiency, specifying if it is insufficient, the particulars where it is defective and shall promptly send a copy of the certificate to the petitioners’ committee by certified mail return receipt requested. A petition certified insufficient for lack of the required number of valid signatures may be amended once within 15 days; if the petitioners’ committee files a notice of intention to amend it with the Clerk within two days after receiving the copy of his certificate and files a supplementary petition which shall comply with the requirements of subsections b and c of Section 803, and within five days after it is filed the Clerk shall complete a certificate as to the sufficiency of the petition as amended and promptly send a copy of such certificate to the petitioners’ committee by certified mail with return receipt requested as in the case of an original petition. If a petition or amended petition is certified sufficient or if a petition or amended petition is certified insufficient and the petitioners’ committee has not elected to amend or request commission review under subsection b of this section within the time required, the Clerk shall promptly present his certificate to the commission and the certificate shall then be a final determination as to the sufficiency of the petition. (Emphasis supplied.)
Section 806, which sets forth procedures for commission action on petitions which have been determined sufficient, states:
*487 a. When an initiative or referendum petition has been finally determined sufficient, the commission shall promptly consider the proposed initiative ordinance in the manner provided in the Charter or reconsider the referred ordinance by voting its repeal. If the Commission fails to adopt the proposed initiative ordinance without any change in substance within 60 days or fails to repeal the referred ordinance within 30 days after the date of the petition was finally determined sufficient, it shall submit the proposed or referred petition to the voters of the City.
b. The vote of the voters of the City on a proposed or referred ordinance shall be held not less than thirty days and no more than one year of the date of the final commission vote thereon. If no regular City election is to be held within the period prescribed in this subsection, the Commission shall provide for a special election, otherwise the vote shall be held at the same time as such regular election, except that the Commission may, at its discretion, provide for a special election at an earlier date within the prescribed period. Copies of the proposed or referred ordinance shall be made available to the polls.
c. An initiative or referendum petition may be withdrawn at any time prior to the 13th day preceding the day scheduled for a vote of the City by filing with the City Clerk a request for withdrawal signed by at least four members of the Petitioners’ committee. Upon the filing of such request, the petition shall have no further force or effect and all proceedings thereon shall be terminated.
A reading of these two sections in pari materia with Section 805 indicates that a reasonable construction of. the Section 805 suspension of the effect of an ordinance sought to be reconsidered is that such suspension will not go into effect until such time as (1) the City Clerk presents a certificate to the Commission that the petition is sufficient for a referendum, or (2) the full commission determines the petition is sufficient. Such an interpretation would lead to a reasonable result, in that the suspension would be in effect only for the Section 806, 60- and 30-day time periods for action when a petition is determined sufficient for a referendum under the provisions of Section 805.
The foregoing construction of Section 805 would mean that the effect of an ordinance sought to be reconsidered pursuant to a referendum petition would not be sus: pended until the city clerk presents his certificate to the commission as to the sufficiency of the petition. Such an interpretation gives effect to the plain meaning of the words used in the charter, but avoids the unreasonable result of suspending the effect of existing ordinances for an indefinite period of time, solely on the basis of a petition which ultimately may be determined insufficient.
Application of this construction to Section 805 results in a determination that Ordinance 87-6 went into effect at 9:00 p.m. on July 9, 1987, and its effect was not suspended until July 20, 1987, when the city clerk presented his certificate to the commission that the referendum petition was sufficient. Under this construction, the temporary alcoholic beverage license issued on July 10, 1987, was a valid license issued pursuant to then effective Ordinance 87-6. On August 20, 1987, pursuant to the sufficient citizens’ petition, the city commission enacted Ordinance 87-11, which repealed Ordinance 87-6.
The interpretation proposed by appellant, i.e., that Section 805 will suspend the effect of only those ordinances which have passed but have not yet taken effect, would avoid the unreasonable result, that fifteen percent of the electorate could, by the simple expedient of filing a petition, suspend the operation of ordinances already in effect for indefinite periods of time. Although appellant’s interpretation has a certain appeal, it ignores Section 801.b., which provides that “[qualified voters ... shall have the power to require reconsideration by the commission of any adopted ordinance.” Thus, appellant’s interpretation is in contravention of the rule of construction which directs that statutes relating to the same *488 purpose should be construed in harmony with each other. City of Boca Raton v. Gidman, 440 So.2d at 1282.
In summary, it appears the trial court correctly determined that the High Springs City Charter contains no limitation on the time within which voters can require reconsideration of any adopted ordinance. However, the record does not support the determination that Ordinance 87-6 was suspended from taking effect and that the clerk’s certificate that appellant complied with the then city code was invalid before it was filed with DABT. Indeed, the city tacitly admits that Ordinance 87-6 was in effect on July 9, 1987, at least from 9:00 p.m. until 10:30 p.m. To counter this admission, the city urges appellant took no action to its detriment in reliance on the passage of Ordinance 87-6.
In a similar vein, the trial court’s determination regarding nonconforming use and equitable estoppel was predicated on the view that the referendum petitions concerning Ordinance 87-6 were filed before appellant was issued an alcoholic beverage license. We agree with the trial court's determinations that estoppel would not lie because appellant’s actions in securing a license and selling alcoholic beverages on the premises all occurred after the petitions were filed, although Ordinance 87-6 had taken effect.
It does not appear that appellant is entitled to a permanent injunction. It is well settled that a loss occasioned by a zoning or rezoning prohibiting a use which was permissible when the property was purchased is rarely sufficient to merit relief. See Jones, 399 So.2d at 1073-74. In other words,
[a]ll that one who plans to use his property in accordance with existing zoning regulations is entitled to assume is that such regulations will not be altered to his detriment, unless the change bears a substantial relation to the health, morals, welfare or safety of the public. (Emphasis supplied.)
City of Miami Beach v. 8701 Collins Avenue, 77 So.2d 428 (Fla.1954). Clearly, the zoning provision in this case meets the foregoing standard.
Furthermore, estoppel will arise only if an individual’s change of position was substantial and was induced by an official act “under circumstances giving rise to a reasonable conclusion that the government knew or should have known that its act would be relied upon in that very manner.” Jones, 399 So.2d at 1074. While it is reasonable to conclude that the city commission knew appellant would rely upon adoption of Ordinance 87-6 by applying for and obtaining a beverage license, appellant was operating a restaurant on the premises in question before Ordinance 87-6 was adopted. Therefore, the change in appellant’s circumstances could not be termed substantial. In addition, the record in this case reflects that the changed use of appellant’s premises began after the petitions for referendum were filed and was of such short duration that abrogating the Cafe’s right to sell alcoholic beverages on its premises would not rise to the level of injustice and hardship as to warrant enjoining enforcement of Ordinance 87-11. See Fortunato v. City of Coral Gables, 47 So.2d 321 (Fla.1950).
Accordingly, for the foregoing reasons, we affirm the final judgment denying appellant’s petition for a permanent injunction.
SHIVERS, C.J., and ERVIN, JJ„ concur.