JOANOS, Judge.
The Florida Police Benevolent Association, Inc. (Florida PBA) appeals a declaratory statement issued by the Florida Department of Agriculture and Consumer Services (Department), in which the Department resolved the Florida PBA’s petition for declaratory relief, by determining that the Department’s road guard inspection special officers do not possess felony arrest authority pursuant to section 901.15(11), Florida Statutes. The Florida PBA challenges the Department’s interpretation of the statute with reference to road guard inspection special officers employed by the Department. We affirm, but certify the question involved as a question of great public importance.
In 1975, the legislature created the classification of road guard inspection special officer within the Florida Department of Agriculture and Consumer Services. See Ch. 75-215, § 2, Laws of Fla. As originally enacted, such officers were granted “power and authority to make arrests, with or without warrants as provided in s. 570.-15, for the violations of law committed within the jurisdiction of s. 570.15, ... and ... the right and authority to carry arms while on duty,” provided such officers meet the requirements of the Police Standards and Training Commission. § 570.151(2), Fla.Stat. (1975).
In 1988, the legislature amended section 570.151(2), to provide greater specificity concerning the agriculture laws to which the arrest authority of road guard inspection special officers applies. See Ch. 88-341, § 3, Laws of Fla. The amendatory language, codified at section 570.151(2), Florida Statutes (Supp.1988), provides:
(2) All such special officers shall have power and authority to make arrests, with or without warrants as provided in s. 570.15 and all other laws relating to livestock, citrus and citrus products, tomatoes, limes, avocados, plants, and other horticultural products and any section with respect to which any authority is conferred by law on the department, ... (emphasis supplied).
Also during the 1988 session, the legislature amended section 901.15, Florida Statutes, which defines situations when a law enforcement officer may arrest a person without a warrant. See Ch. 88-381, § 53, Laws of Fla. The amendments created section 901.15(11), Florida Statutes (Supp. 1988), which deals with the authority of state law enforcement officers to make *148 warrantless arrests. This new subsection provides:
A law enforcement officer may arrest a person without a warrant when:
[[Image here]]
(11) He is employed by the State of Florida as a law enforcement officer as defined in s. 943.10(1), or part-time law enforcement officer as defined in s. 943.-10(6), and:
(a) He reasonably believes that a felony involving violence has been or is being committed and that the person to be arrested has committed or is committing the felony;
(b) While engaged in the exercise of his state law enforcement duties, he reasonably believes that a felony has been or is being committed; or
(c) A felony warrant for the arrest has been issued and is being held for execution by another peace officer. Subsequent to the enactment of Chapter
88-381, creating section 901.15(11), the Florida PBA petitioned the Department for a declaratory statement to determine whether, in the view of the Department, road guard inspection special officers possess the warrantless felony arrest authority provided in section 901.15(11). The Department’s declaratory statement expressed the view that its special officers do not possess the warrantless felony arrest authority delineated in section 901.15(11). It is from the Department’s construction of section 901.15(11), as it pertains to its special officers, that this appeal is taken.
The Florida PBA takes the position that section 901.15(11) clearly establishes that an individual employed by the state as a law enforcement officer as defined in section 943.10(1) possesses the authority to arrest without a warrant under the circumstances outlined in section 901.15(ll)(a)-(c), Florida Statutes. The PBA maintains that since section 901.15(11) is clear and unambiguous, the Department inappropriately relied on rules of statutory construction to limit the arrest authority of its special officers. According to the PBA, even if one assumed that section 901.15(11) were amenable to statutory construction, legislative intent must be determined from a consideration of the act as a whole. The PBA maintains that when the act is considered as a whole, it was clearly the legislature’s intent to broaden the warrantless arrest authority of all state law enforcement officers, including those employed by the Department as road guard inspection special officers.
While agreeing that the language of the statute is clear and requires no construction, the Department observes that the controversy is presented because two equally clear statutes passed during the same legislative session bear upon the same issue. The Department distinguishes the two statutory provisions on the basis of their respective areas of application, i.e., section 901.15 was part of an omnibus crime prevention bill and applies generally to all law enforcement officers, while section 570.151 does not have general application. Rather, it was part of an agriculture marketing bill and deals only with the duties of road guard inspection special officers. It is the Department’s position that when the two statutes are harmonized so as to give meaning and a field of operation to both, it is clear that the Department’s special officers do not possess the felony arrest powers granted by section 901.15. The Department emphasizes that the right of its officers to initiate a warrantless search is based on a limited regulatory exercise of the police power for the protection of Florida’s agricultural interests and the health and welfare of its citizens.
As the Department observed, the instant controversy resulted because two statutes dealing with the same subject matter were passed during the same legislative session. It is the possible interplay of the two statutes, rather than any ambiguity in the language of the respective statutes, that warrants resort to certain rules of statutory construction. In this vein, the logical starting point is the principle that—
A law should be construed together with any other law relating to the same purpose such that they are in harmony, (citations omitted) Courts should avoid a *149 construction which places in conflict statutes which cover the same general field.
City of Boca Raton v. Gidman, 440 So.2d 1277, 1282 (Fla.1983). See also Dept. of Professional Regulation v. Yolman, 508 So.2d 468, 470 (Fla. 1st DCA 1987). Courts will not apply a literal interpretation of a statute when to do so would not only lead to an absurd result, but also place it in direct conflict with other laws relating to the same purpose. Gidman, 440 So.2d at 1282.
Where, as in the instant case, different statutes relating to the same subject matter are adopted at the same session of the legislature, the different chapters must be harmonized if possible. This is because
[i]t is to be presumed that different acts on the same subject passed at the same session of the Legislature are imbued by the same spirit and actuated by the same policy, and they should be construed each in the light of the other. The legal presumption is that the Legislature did not intend to keep really contradictory enactments in the statute books, or to effect so important a measure as the repeal of a law without expressing an intention to do so. An interpretation leading to such a result should not be adopted, unless it be inevitable. The rule of construction in such cases is that if courts can, by any fair, strict, or liberal construction, find for the two provisions a reasonable field of operation, without destroying their evident intent and meaning, preserving the force of both, and construing them together in harmony with the whole course of legislation upon the subject, it is their duty to do so.
State ex rel. School Board of Martin County v. Department of Education, 317 So.2d 68, 72-73 (Fla.1975), quoting Curry v. Lehman, 55 Fla. 847, 47 So. 18, 21 (1908).
Two other recognized maxims of statutory construction particularly apt to the issue here under review are the principles that the mention of one thing implies the exclusion of another, and a special statute covering a particular subject matter controls over a general provision pertaining to the same or other subjects in general terms. Adams v. Culver, 111 So.2d 665 (Fla.1959); J.V. v. State, 516 So.2d 1133, 1134 (Fla. 1st DCA 1987). Application of these two rules of construction to the contested legislation in this case reveals that both statutes were adopted during the 1988 legislative session, and both statutes concern an officer’s power and authority to arrest. Section 570.151 deals with the appointment, duties, and powers of Department of Agriculture road guard inspection special officers. Pursuant to section 570.-151(2), the Department’s road guard inspection special officers have power and authority to make arrests “as provided in s. 570.-15 and all other laws relating to livestock, citrus and citrus products, tomatoes, limes, avocados, plants, and other horticultural products and any section with respect to which any authority is conferred by law on the department.”[1] The provisions of section 901.15(11), specify the circumstances in which a Florida law enforcement officer may arrest without a warrant.
Both parties agree that the Department’s special officers are law enforcement officers within the meaning of section 943.-10(1), and that both statutes pertain to the arrest authority of Florida’s law enforcement officers. Nevertheless, a comparison of the two statutes demonstrates that section 570.151(2) is a special statute covering a particular subject matter, while section 901.15(11) is a statute of general application. Section 570.151(2) mentions the specific areas in which a Department special officer has arrest authority, which arrest authority is directed expressly to matters within the jurisdiction of the Department. Thus, the authority to exercise the section 901.15(11) felony arrest power is implicitly *150 excluded because not enumerated in section 570.151(2).
Moreover, to ascribe the meaning to section 570.151(2) urged by the Florida PBA, in effect, would grant road guard inspection special officers the power to make a felony arrest predicated upon a warrantless regulatory search. We are not persuaded that the legislature intended to extend the Department’s limited regulatory authority to conduct a warrantless search for possible infraction of the state’s agricultural laws, so as to include the felony arrest power for matters disclosed by the warrantless search.[2] In making this determination, we are not unmindful that the Senate Staff Analysis, provided in the appendix to the Florida PBA’s brief, indicates that at its inception, one of the proposed purposes of section 901.15(11) was to broaden the warrantless arrest authority of road guard inspection special officers. However, we must be guided by the language of both section 570.151(2) and section 901.15(11), and not what the legislative staff may have intended. See Shelby Mutual Insurance Company v. Smith, 556 So.2d 393 (Fla.1990).
An analogous situation obtained in State v. Parsons, 549 So.2d 761 (Fla. 3d DCA 1989). In Parsons, the Dade County Court certified to the District Court the question whether Florida Marine Patrol officers have authority to enforce noncriminal traffic infractions. The County Court held that the Marine Patrol did not have such authority, and the District Court agreed, saying:
we reach this conclusion by applying the general rule of construction that statutes purporting to confer governmental and particularly criminal authority are to be strictly construed, 49 Fla.Jur.2d Statutes §§ 195, 196 (1984); and the familiar doctrine of expressio unius est exclusio al-terius, which is simply to the effect that a statutory reference to particular items implies the exclusion of similar matters which are not mentioned.... In the light of these principles, it seems clear that the studied inclusion of various kinds of law enforcement officers in section 316.640, Florida Statutes (1987), which deals specifically with the precise subject matter of this case, the enforcement of the traffic laws of our state, 49 Fla.Jur.2d Statutes § 126 (1984), clearly excludes the possibility of providing such authority to Marine Patrol officers, who are just as clearly not mentioned.
549 So.2d at 763-764, footnote omitted.
We conclude that the construction of section 901.15(11) espoused by the Florida PBA would serve to abrogate the express limitations on the warrantless arrest authority of road guard inspection special officers, as those limitations are delineated in section 570.151(2), and adopted at the same legislative session. This we decline to do.
Because we find that section 570.151(2) clearly confines the arrest authority of road guard inspection special officers to violations of laws within the jurisdiction of the Department of Agriculture and Consumer Services, we approve the Department’s determination that section 901.-15(11), Florida Statutes, does not confer authority upon the Department’s special officers to effect warrantless felony arrests. However, in light of the import attendant upon any construction of a felony arrest statute, we certify the following question to the Florida Supreme Court as a question of great public importance:
DOES THE WARRANTLESS FELONY ARREST AUTHORITY CONFERRED UPON LAW ENFORCEMENT OFFI *151 CERS, BY SECTION 901.15(11), FLORIDA STATUTES (SUPP.1988), APPLY TO THE ROAD GUARD INSPECTION SPECIAL OFFICERS EMPLOYED BY THE DEPARTMENT OF AGRICULTURE AND CONSUMER SERVICES?
BOOTH and ALLEN, JJ., concur.

. As the Florida Police Benevolent Association recognized in its brief, the 1988 amendment to section 570.151(2) incorporated language specifically delineating the range of a special officer’s arrest authority. Prior to the 1988 amendment, section 570.151(2) simply stated that special officers were authorized to effect arrests “for violations of law committed within the jurisdiction of s. 570.15.”

. Questions two and three of the petition for declaratory statement submitted by the Florida Police Benevolent Association to the Department ask:
II. If a roadguard officer is in the process of visually examining the cargo of a vehicle pursuant to Section 570.151, Florida Statutes, and Rule 5E-12.003, F.A.C., and discovers contraband drugs, is he or she authorized to effectuate an arrest pursuant to Section 901.15, F.S.?
III. If a roadguard officer has only opened the door in preparation for a visual inspection of the cargo of a vehicle pursuant to Section 570.151, Florida Statutes, and Rule 5E-12.003, F.A.C., and discovers that the entire cargo is contraband drugs, is he or she authorized to effectuate an arrest pursuant to Section 901.-15, Florida Statutes?